IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PIRACY PROTECTION LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. _____ |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| PANASONIC CORPORATION OF NORTH AMERICA | ) |
| NORTH AMERICA, SANYO CORPORATION OF | ) |
| AMERICA and FUNAI CORPORATION, INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

For its Complaint, Plaintiff Piracy Protection LLC ("Piracy Protection" or "Plaintiff"), by and through the undersigned counsel, alleges as follows:

## THE PARTIES

1.      Plaintiff is a Delaware limited liability company with a place of business located at 3511 Silverside Road, Suite 105, Wilmington, Delaware 19810.

2.      Defendant Panasonic Corporation of North America ("Panasonic") is a Delaware company with, upon information and belief, a place of business located at Two Riverfront Plaza, 828 McCarter Highway, Newark, New Jersey 07102.

3.      Defendant Sanyo Corporation of America ("Sanyo") is a Delaware company with, upon information and belief, a place of business located at 500 Fifth Avenue, Suite 3620, New York, NY 10110.

4.      Upon information and belief, Panasonic and Sanyo are related entities.

5.      Defendant Funai Corporation, Inc. ("Funai") is a Georgia company, with, upon information and belief, a place of business located at 201 Route 17 North, Suite 903, Rutherford, New Jersey 07070.

6.      Upon information and belief, Panasonic, Sanyo and Funai (collectively, "Defendants") entered into an agreement whereby Funai pays a royalty to Panasonic and/or Sanyo for the Sanyo products accused of infringement herein.

## JURISDICTION AND VENUE

7.      This action arises under the Patent Act, 35 U.S.C. § 1 *et seq.*

8.      Subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1338.

9.      Upon information and belief, Defendants conduct substantial business in this forum, directly or through intermediaries, including:  (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in this district.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1400(b).

## THE PATENT-IN-SUIT

11.     On March 26, 2013, U.S. Patent No. 8,407,782 (the "'782 patent"), entitled "Data Copyright Management," was duly and lawfully issued by the U.S. Patent and Trademark Office. A true and correct copy of the '782 patent is attached hereto as Exhibit A.

12.     The claims of the '782 patent ("patent-in-suit"), including the asserted claims, when viewed as a whole, including as ordered combinations, are not merely the recitation of well-understood, routine, or conventional technologies or components. The claimed inventions were not well-known, routine, or conventional at the time of the invention, over twenty years ago, and represent specific improvements over the prior art and prior existing systems and methods for managing and protecting copyrighted data.

2

13.     According to the U.S. Patent and Trademark Office Board of Patent Appeals and Interferences ("BPAI"), the '782 patent's claimed invention "is directed to a data copyright management system that decrypts encrypted data for a first form of usage, such as displaying and editing data at a user's terminal, while concurrently re-encrypting data for a second form of usage, such as storing, copying and transferring of the same data."  Ex. B, attached hereto, at p. 2 (citing '782 patent at Abstract, 24:5-25:2).

14.     As explained in the '782 patent:

> In a conventional database system, only character data is handled. However, in multimedia systems, sound data and picture data originally generated as analog data, are digitized and used as part of the database in addition to the other data in the database such as character data.
> Under such circumstances, it is an important question to determine how to handle copyrights of the data in the database.  However, there are no means in the prior art for copyright management and control of such actions as copying, editing, transferring, etc. of data

Ex. A, '782 patent at 2:16-25.

15.     The asserted claims of the patent-in-suit are directed to specific improvements in data copyright management systems.   Among other things, the asserted claimed inventions concurrently decrypt and re-encrypt encrypted data to perform copyright management and control.

16.     Claim 1 of the '782 patent recites:

> 1. A method performed by a first computing device, the method comprising:
> receiving an encrypted version of a first set of protected digital data;
> receiving a first crypt key specifically associated with the first set of protected digital data;
> decrypting the encrypted version of the first set of protected digital data using the first crypt key to produce decrypted digital data;
> managing forms of usage of the first set of protected digital data, wherein said managing includes, for a first form of usage requested by a user of the first computing device:
> when the first form of usage is one of a first set of usages, permitting the first form of usage using the decrypted digital data; and
> when the first form of usage is one of a second set of usages distinct from usages in the first set, permitting the first form of usage on a re-encrypted version of the decrypted digital data generated by re-encrypting the

decrypted digital data using a second crypt key.

*Id.* at 29:53-30:5.

17.     The BPAI determined that prior are did not "disclose[] or even suggest[] that the form of usage of a first set is permitted based on the decrypted digital data, while the form of usage of another set is permitted based upon the re-encrypted version of the decrypted digital data." Ex. B at 6.

18.     As noted in the '782 patent and acknowledged by the BPAI, the claimed technologies comprise innovative systems and processes that provide increased security over those existing at the time and result in a better digital copyright management.  The patent-in-suit thus provides concrete applications that improved digital copyright management.

19.     The inventor did more than simply apply current technology to an existing problem.  His invention, as embodied in the asserted claims, was a significant advancement in digital copyright management.

20.     These noted improvements over the prior art represent meaningful limitations and/or inventive concepts based upon the state of the art over 25 years ago.  Further, including in view of these specific improvements, the inventions of the asserted claims, when such claims are viewed as a whole and in ordered combination, are not routine, well-understood, conventional, generic, existing, commonly used, well-known, previously known, typical, and the like over 25 years ago, including because, until the inventions of the asserted claims of the patent-in-suit, the claimed inventions were not existing or even considered in the field.

21.     The claimed inventions are necessarily rooted in computer technology, i.e., digital copyright management.  The claimed solutions amount to an inventive concept for resolving the particular problems and inefficiencies noted above.

22.     Plaintiff is the assignee and owner of the right, title and interest in and to the '782

patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

### COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,407,782 – PANASONIC

23.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 28 as if fully set forth herein.

24.   Without license or authorization and in violation of 35 U.S.C. § 271(a), Panasonic has infringed and continues to infringe at least claim 1 of the '782 patent by making, using, importing, offering for sale, and/or selling methods, products and systems for data copyright management, including, but not limited to, Smart Network 3D Blu-Ray Disc Player DMP-BDT500 (the "Panasonic Accused Device"), because each and every element is met either literally or equivalently.

25.   Upon information and belief, Panasonic used the Panasonic Accused Device via its internal use and testing in the United States, directly infringing one or more claims of the '782 patent.

26.   More specifically and upon information and belief, the Panasonic Accused Device includes a method performed by a first computing device.

Advanced Access Content System Licensing Administrator (AACS LA) has developed the Advanced Access Content System, a specification for managing content stored on the next generation of prerecorded and recorded optical media for consumer use with PCs and CE devices. Advanced Access Content System complements new innovations in the next-generation of optical discs, and enable consumers to enjoy next-generation content, including high-definition content.

https://aacsla.com/.

**Information about Output from the VIDEO OUT terminal for DMP-BDT500EG**

Panasonic has applied the prohibition of Analogue Video Output for AACS contents, e.g. BD-Video, to DMP-BDT500EG units which have been produced from November,2013 with the label (picture [1]) on the box and the message (picture [2]) on HOME menu is displayed, because of the reinforcement of the copy right protection.

https://av.jpn.support.panasonic.com/support/global/cs/bd/faq/bdt500eg.html.

> **Q03.** The error message "The selected video cannot be played because it is copyright protected" is displayed.
>
> **A03.**
> - There are the following possibilities:
>   - The AACS module may have expired. Check if the AACS module needs to be updated from the application setting button.
>   - You may not have downloaded the module for playing copyrighted content. Download and check the necessary modules.
>   - It may not be an HDCP-compatible environment that is necessary for playing content.
>   - If the above does not improve the problem, there may be a problem with your device. If the PC environment is changed from the initial shipment, it may not work properly. (Graphic card, monitor, etc.)

https://av.jpn.support.panasonic.com/support/software/mt/faq/mt_1.html (translated into English via Google Chrome).





https://shop.panasonic.com/support-only/DMP-BDT500.html.

27.     The Panasonic Accused Device receives an receiving an encrypted version of a first set of protected digital data, receives a first crypt key specifically associated with the first set of protected digital data and decrypts the encrypted version of the first set of protected digital data using the first crypt key to produce decrypted digital data.

> Chapter 3 describes Blu-Ray Disc specific procedures for the production (encryption) and off-line playback (decryption) of AACS Content on pre-recorded Blu-Ray Read Only Media.

Advanced Access Content System: Blu-ray Disc Pre-recorded Book at p. 1 (available at Source:

http://aacs.tjn.chef.causewaynow.com/wp-

content/uploads/2019/02/AACS_Spec_BD_Prerecorded_Final_0_953.pdf).



*KCD is used by only certain classes of devices.

**Figure 6-2   Encryption and Decryption Overview for BD-ROM on which SKB / uMKB is not assigned**

*Id.* at p. 133.

28.     The Panasonic Accused Device manages forms of usage of the first set of protected digital data, wherein said managing includes, for a first form of usage requested by a user of the first computing device.

## 2.  Licensed Player Compliance Requirements

2.1  **Applicability.**  This Part 2 Section 2 is applicable to all Licensed Players as shipped.

2.2  **Analog Outputs.**  A Licensed Player shall not pass, or direct to be passed Decrypted AACS Content to an analog output except:

    2.2.1  An analog output of audio, or of the audio portions of other forms of Decrypted AACS Content; or

Advanced Access Content System ("AACS") Adopter Agreement at p. E-17 (available at

http://aacs.tjn.chef.causewaynow.com/wp-

content/uploads/2019/02/AACS_Adopter_Agreement_20121115.pdf).

2.22     "<u>Decrypted AACS Content</u>" shall mean, with respect to a Licensed Product, AACS Content that such product has decrypted using both AACS Bus Decryption (where applicable) and AACS Basic Decryption but whose control and/or protection obligations have not been passed to an output permitted by these Compliance Rules or to an AACS Authorized Copying Method or Content Owner Authorized Copying Method permitted by this Agreement.  *Note to Adopter: A copy made using a Bound Copy Method remains subject to all obligations applicable to Decrypted AACS Content under this Agreement, until such copy is passed to an output permitted under this Agreement including but not limited to Part 2, Sections 2.2, 2.3, 3.2 and 3.6.*

*Id.* at E-4 – E-5.

29.     When the first form of usage is one of a first set of usages, the managing permits

the first form of usage using the decrypted digital data.

2.2  **Analog Outputs.**  A Licensed Player shall not pass, or direct to be passed Decrypted AACS Content to an analog output except:

    2.2.1     An analog output of audio, or of the audio portions of other forms of Decrypted AACS Content; or

2.2.2   An analog output of video delineated in Table A1, AACS Analog
         Authorized Outputs, in accordance with any associated restrictions and
         obligations specified therein and in the Agreement, and subject to the
         following sunset requirements:

2.2.2.1 **Analog Sunset – 2010.** With the exception of Existing Models,
         any Licensed Player manufactured after December 31, 2010 shall
         limit analog video outputs for Decrypted AACS Content to SD
         Interlace Modes only.   Existing Models may be manufactured and
         sold by Adopter up until December 31, 2011.  Notwithstanding the
         foregoing, Adopter may continue to manufacture and sell an
         Existing Model in which the implementation of AACS Technology
         is a Robust Inactive Product after December 31, 2010 provided
         that when such Robust Inactive Product is activated through a
         Periodic Update, such Periodic Update results in a Licensed Player
         that limits analog video outputs for Decrypted AACS Content to
         SD Interlace Modes only. Nothing in this section shall be
         interpreted to override limitations or obligations stated in any other
         section of this Agreement.

         For purposes of this section, "SD Interlace Modes" shall mean
         composite video, s-video, 480i component video and 576i video.

2.2.2.2 **Analog Sunset – 2013.**  No Licensed Player that passes Decrypted
         AACS Content (excluding Decrypted AACS Content that is
         decrypted from AACS Recordable Video where the CCI in such
         Decrypted AACS Content is marked other than Copy Never) to
         analog video outputs may be manufactured or sold by Adopter
         after December 31, 2013.  For the avoidance of doubt, a Bound
         Copy Method to which AACS Content has been Moved from
         AACS Recordable Video with CCI marked other than Copy Never
         or to which AACS Content has been copied from AACS
         Recordable Video with CCI marked EPN, is not required to
         implement the analog sunset required by this Section 2.2.2.2 with
         respect to such AACS Content.

*Id.* at E-17 – E-18.

30.     When the first form of usage is one of a second set of usages distinct from usages

in the first set, the managing permits the first form of usage on a re-encrypted version of the

decrypted digital data generated by re-encrypting the decrypted digital data using a second crypt key.

2.3 **Digital Outputs.** A Licensed Player shall not pass, or direct to be passed Decrypted AACS Content to a digital output except:

2.3.1 A digital output of audio, or of the audio portion of other forms of Decrypted AACS Content, in compressed audio format (such as AC3) or in Linear PCM format in which the transmitted information is sampled at no more than 48 kHz and no more than 16 bits.

2.3.2 An output delineated in Table D1, AACS Authorized Digital Outputs in accordance with any associated restrictions and obligations specified therein and in the Agreement.

*Id.* at E-18 – E19.

### TABLE D1

### AACS Authorized Digital Outputs (Non-Copying Methods)

| AACS Authorized Digital Outputs | Associated Restrictions and Obligations |
| --- | --- |
| DTCP | A Licensed Player may pass Decrypted AACS Content to an output protected by DTCP, provided that when doing so, the Licensed Player shall (a) carry any DTCP System Renewability Messages delivered in association with such content (in the manner described or referenced in the AACS Specifications) to the DTCP Source Function, and (b) set the following fields of the DTCP Descriptor to the indicated values: |

*Id.* at E67.

| DVI | A Licensed Player manufactured on or before December 31, 2010 that is incorporated into a computer product may pass Decrypted AACS Content for which the Digital Only Token was not set to a DVI output as a Constrained Image.  Furthermore, Existing Models with such DVI output may be manufactured and sold by Adopter up until December 31, 2011.  Notwithstanding the foregoing, Adopter may continue to manufacture and sell an Existing Model with such DVI output in which the implementation of AACS Technology is a Robust Inactive Product after December 31, |
|------|------|
|  | 2010 provided that when such Robust Inactive Product is activated through a Periodic Update, such Periodic Update results in a Licensed Player that does not pass Decrypted AACS Content to DVI outputs. |
| HDCP | A Licensed Player may pass Decrypted AACS Content to an output protected by HDCP, provided that when doing so, the Licensed Player shall (a) carry any HDCP System Renewability Message delivered in association with such content (in the manner described or referenced in the AACS Specifications) to the HDCP Source Function and (b) verify that the HDCP Source Function is fully engaged and able to deliver protected content, which means (i) HDCP encryption is operational on such output, (ii) processing of the valid received System Renewability Message associated with such content, if any, has occurred as defined in the HDCP Specification and (iii) there is no HDCP Display Device or Repeater on such output whose Key Selection Vector is in such System Renewability Message. |

*Id.* at E-70 – E71.

High-bandwidth Digital Content Protection (HDCP) is a form of digital copy protection developed by Intel Corporation to prevent copying of digital audio and video content as it travels across connections. The system is meant to stop HDCP-encrypted content from being played on unauthorized devices or devices which have been modified to copy HDCP content. On Panasonic units, this protocol is used on TVs, DVD/Blu-Ray recorders and players with the HDMI connection.

https://support-uk.panasonic.eu/app/answers/detail/a_id/4284/~/what-is-hdcp%3F



https://www.panasonic.com/uk/support/discontinued-products/home-entertainment/dmp-bdt500eb.html.

| Terminal | | |
|---|---|---|
| | HDMI Output | yes (2) |
| | Video Output | yes |
| | Optical Output | yes |
| | Coaxial Output | yes |
| | Analog Audio Output | 7.1ch/2ch+5.1ch |
| | LAN (Ethernet) Terminal | yes (for DLNA, BD-Live™*11, VIERA Connect™*9 and Firmware Update) |

https://shop.panasonic.com/support-only/DMP-BDT500.html.

### 3.4   HDCP Cipher

The HDCP cipher consists of a 128-bit AES module that is operated in a Counter (CTR) mode as illustrated in Figure 3.2.



**Figure 3.2. HDCP Cipher Structure**

$k_s$ is the 128-bit Session Key which is XORed with $lc_{128}$. Elementary streams within a given program or across multiple programs may use the same $k_s$ and $r_{iv}$.

High-bandwidth Digital Content Protection System:   Interface Independent Adaptation at (available      at      p.      53      (available      at      https://www.digital-cp.com/sites/default/files/specifications/HDCP%20Interface%20Independent%20Adaptation%20Specification%20Rev2_2_FINAL.pdf).



Advanced Access Content System (AACS):  Blu-ray Disc Pre-recorded Book at p. 63 (available at http://aacs.tjn.chef.causewaynow.com/wp-content/uploads/2019/02/AACS_Spec_BD_Prerecorded_Final_0_953.pdf).

31.     Plaintiff is entitled to recover from Panasonic the damages sustained by Plaintiff as a result of Panasonic's infringement of the '782 patent in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,407,782 – DEFENDANTS

32.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 35 as if fully set forth herein.

33.     Without license or authorization and in violation of 35 U.S.C. § 271(a), Defendants have infringed and continue to infringe at least claim 1 of the '782 patent by making, using, importing, offering for sale, and/or selling methods, products and systems for data copyright management, including, but not limited to, FWBP808F 4K Ultra HD Blu-ray Player (the "Defendants Accused Device"), because each and every element is met either literally or equivalently.

34.     Upon information and belief, Defendants used the Defendants Accused Device via their internal use and testing in the United States, directly infringing one or more claims of the '782 patent.

35.     More specifically and upon information and belief, the Defendants Accused Device includes a method performed by a first computing device.

Advanced Access Content System Licensing Administrator (AACS LA) has developed the Advanced Access Content System, a specification for managing content stored on the next generation of prerecorded and recorded optical media for consumer use with PCs and CE devices. Advanced Access Content System complements new innovations in the next-generation of optical discs, and enable consumers to enjoy next-generation content, including high-definition content.

https://aacsla.com/.

**AACS**

Advanced Access Content System (AACS) is the content protection scheme used with Blu-ray™ discs.

Owner's Manual ("Owner's Manual") at p. 58 (available at https://dock.funaiport.com/download/download.php?id=6233&brand=SANYO).

**⊙ Note for AACS online**
- The player or disc ID may be sent to the content provider when playing back a disc with BD-Live™ function.
- If you save your viewing history on the server by using these ID's, you will be introduced to other similar movies.
- You can save game score histories.

Owner's Manual at p. 33.



https://www.sanyo-av.com/us/product/product.php?id=585.

36.     The Defendants Accused Device receives an receiving an encrypted version of a first set of protected digital data, receives a first crypt key specifically associated with the first set of protected digital data and decrypts the encrypted version of the first set of protected digital data using the first crypt key to produce decrypted digital data.

Chapter 3 describes Blu-Ray Disc specific procedures for the production (encryption) and off-line playback (decryption) of AACS Content on pre-recorded Blu-Ray Read Only Media.

Advanced Access Content System: Blu-ray Disc Pre-recorded Book at p. 1 (available at Source: http://aacs.tjn.chef.causewaynow.com/wp-content/uploads/2019/02/AACS_Spec_BD_Prerecorded_Final_0_953.pdf).



**Figure 6-2   Encryption and Decryption Overview for BD-ROM on which SKB / uMKB is not assigned**

*Id.* at p. 133.

      37.    The Defendants Accused Device manages forms of usage of the first set of protected digital data, wherein said managing includes, for a first form of usage requested by a user of the first computing device.

## 2.  Licensed Player Compliance Requirements

2.1  **Applicability.**  This Part 2 Section 2 is applicable to all Licensed Players as shipped.

2.2  **Analog Outputs.**  A Licensed Player shall not pass, or direct to be passed Decrypted AACS Content to an analog output except:

    2.2.1   An analog output of audio, or of the audio portions of other forms of Decrypted AACS Content; or

Advanced Access Content System ("AACS") Adopter Agreement at p. E-17 (available at

http://aacs.tjn.chef.causewaynow.com/wp-

content/uploads/2019/02/AACS_Adopter_Agreement_20121115.pdf).

 2.22    "Decrypted AACS Content" shall mean, with respect to a Licensed Product,
       AACS Content that such product has decrypted using both AACS Bus Decryption
       (where applicable) and AACS Basic Decryption but whose control and/or protection
       obligations have not been passed to an output permitted by these Compliance Rules
       or to an AACS Authorized Copying Method or Content Owner Authorized Copying
       Method permitted by this Agreement. *Note to Adopter: A copy made using a Bound
       Copy Method remains subject to all obligations applicable to Decrypted AACS
       Content under this Agreement, until such copy is passed to an output permitted under
       this Agreement including but not limited to Part 2, Sections 2.2, 2.3, 3.2 and 3.6.*

*Id.* at E-4 – E-5.

        38.    When the first form of usage is one of a first set of usages, the managing permits

the first form of usage using the decrypted digital data.

 2.2  **Analog Outputs.** A Licensed Player shall not pass, or direct to be passed Decrypted
      AACS Content to an analog output except:

        2.2.1    An analog output of audio, or of the audio portions of other forms of
                 Decrypted AACS Content; or

2.2.2   An analog output of video delineated in Table A1, AACS Analog
Authorized Outputs, in accordance with any associated restrictions and
obligations specified therein and in the Agreement, and subject to the
following sunset requirements:

2.2.2.1 **Analog Sunset – 2010.** With the exception of Existing Models,
any Licensed Player manufactured after December 31, 2010 shall
limit analog video outputs for Decrypted AACS Content to SD
Interlace Modes only.  Existing Models may be manufactured and
sold by Adopter up until December 31, 2011.  Notwithstanding the
foregoing, Adopter may continue to manufacture and sell an
Existing Model in which the implementation of AACS Technology
is a Robust Inactive Product after December 31, 2010 provided
that when such Robust Inactive Product is activated through a
Periodic Update, such Periodic Update results in a Licensed Player
that limits analog video outputs for Decrypted AACS Content to
SD Interlace Modes only. Nothing in this section shall be
interpreted to override limitations or obligations stated in any other
section of this Agreement.

For purposes of this section, "SD Interlace Modes" shall mean
composite video, s-video, 480i component video and 576i video.

2.2.2.2 **Analog Sunset – 2013.**  No Licensed Player that passes Decrypted
AACS Content (excluding Decrypted AACS Content that is
decrypted from AACS Recordable Video where the CCI in such
Decrypted AACS Content is marked other than Copy Never) to
analog video outputs may be manufactured or sold by Adopter
after December 31, 2013.  For the avoidance of doubt, a Bound
Copy Method to which AACS Content has been Moved from
AACS Recordable Video with CCI marked other than Copy Never
or to which AACS Content has been copied from AACS
Recordable Video with CCI marked EPN, is not required to
implement the analog sunset required by this Section 2.2.2.2 with
respect to such AACS Content.

*Id.* at E-17 – E-18.

39.     When the first form of usage is one of a second set of usages distinct from usages

in the first set, the managing permits the first form of usage on a re-encrypted version of the

decrypted digital data generated by re-encrypting the decrypted digital data using a second crypt key.

2.3 **Digital Outputs.**  A Licensed Player shall not pass, or direct to be passed Decrypted AACS Content to a digital output except:

> 2.3.1   A digital output of audio, or of the audio portion of other forms of Decrypted AACS Content, in compressed audio format (such as AC3) or in Linear PCM format in which the transmitted information is sampled at no more than 48 kHz and no more than 16 bits.

> 2.3.2   An output delineated in Table D1, AACS Authorized Digital Outputs in accordance with any associated restrictions and obligations specified therein and in the Agreement.

*Id.* at E-18 – E19.

## TABLE D1

### AACS Authorized Digital Outputs (Non-Copying Methods)

| AACS Authorized Digital Outputs | Associated Restrictions and Obligations |
|---|---|
| DTCP | A Licensed Player may pass Decrypted AACS Content to an output protected by DTCP, provided that when doing so, the Licensed Player shall (a) carry any DTCP System Renewability Messages delivered in association with such content (in the manner described or referenced in the AACS Specifications) to the DTCP Source Function, and (b) set the following fields of the DTCP Descriptor to the indicated values: |

*Id.* at E67.

| DVI | A Licensed Player manufactured on or before December 31, 2010 that is incorporated into a computer product may pass Decrypted AACS Content for which the Digital Only Token was not set to a DVI output as a Constrained Image.  Furthermore, Existing Models with such DVI output may be manufactured and sold by Adopter up until December 31, 2011.  Notwithstanding the foregoing, Adopter may continue to manufacture and sell an Existing Model with such DVI output in which the implementation of AACS Technology is a Robust Inactive Product after December 31, |
|---|---|
|  | 2010 provided that when such Robust Inactive Product is activated through a Periodic Update, such Periodic Update results in a Licensed Player that does not pass Decrypted AACS Content to DVI outputs. |
| HDCP | A Licensed Player may pass Decrypted AACS Content to an output protected by HDCP, provided that when doing so, the Licensed Player shall (a) carry any HDCP System Renewability Message delivered in association with such content (in the manner described or referenced in the AACS Specifications) to the HDCP Source Function and (b) verify that the HDCP Source Function is fully engaged and able to deliver protected content, which means (i) HDCP encryption is operational on such output, (ii) processing of the valid received System Renewability Message associated with such content, if any, has occurred as defined in the HDCP Specification and (iii) there is no HDCP Display Device or Repeater on such output whose Key Selection Vector is in such System Renewability Message. |

*Id.* at E-70 – E71.

> **Copyright protection system**
> To play back the digital video images of a BD-video or DVD-video via an HDMI connection, it is necessary that both the player and the display device (or an AV receiver / amplifier) support a copyright protection system called HDCP (high-bandwidth digital content protection system).  HDCP is copy protection technology that comprises data encryption and authentication of the connected AV device.  This unit supports HDCP.  Please read the operating instructions of your display device (or an AV receiver / amplifier) for more information.
> Note that 4K content viewing requires an HDCP 2.2 compatible TV and cables.

Owner's Manual at p. 46.

**Music file**

**FLAC (.flac)**

| | |
|---|---|
| Sampling frequency: | up to 192kHz |
| Bit rate: | up to 16.2Mbps |

**WAV (.wav)**

| | |
|---|---|
| Sampling frequency: | up to 192kHz |
| Bit rate: | up to 36Mbps |

**Vorbis (.ogg)**

| | |
|---|---|
| Sampling frequency: | up to 96kHz |

**AIFF (.aif)**

| | |
|---|---|
| Sampling frequency: | up to 192kHz |
| Bit rate: | up to 36Mbps |

**Monkey's Audio (.ape)**

| | |
|---|---|
| Sampling frequency: | up to 192kHz |
| Bit rate: | up to 1Mbps |

**Home Network - PCM**

| | |
|---|---|
| Sampling frequency: | up to 44.1, 48 kHz |

*.Id.* at p. 26.

**HDMI (High-Definition Multimedia Interface)**

A digital interface between an audio and video Source. It can transmit component video, audio, and control signal with one cable connection.

*Id.* at p. 58.

- If this unit is connected to an HDCP incompatible display device, video will not be displayed properly.
- Use a certified HDMI cable (an HDMI cable with the HDMI logo) for this connection. High-Speed HDMI cable (also known as HDMI category 2 cable) is recommended for better compatibility.
- In order for Ultra HD Blu-ray™ video playback, connect this unit to a 4K/HDR compatible display device using an 18 Gbps high-speed HDMI cable.
- Do not tilt the HDMI connector when inserting it into the HDMI port, and make sure the shapes of the HDMI port and the HDMI cable's connector match.

*Id.* at p. 15.

## 3.2. Rear panel



1. **AC power cord**
2. **LAN terminal**
3. **HDMI OUT jack**

*Id.* at p. 8.

**Ultra HD Blu-ray™**

4K/HDR playback requires devices and HDMI cables that meet the following standards:

**Device:** HDCP2.2, 4K/60p/4:4:4, HDR signal for Ultra HD Blu-ray™ standards

**HDMI cable:** 18Gbps high-speed cables (HDMI 2.0)

If your devices or their HDMI ports to be used do not meet these standards (e.g. only compatible with up to 4K/60p/4:2:2 or incompatible with HDR and/or HDCP2.2), the video output will be dynamic range-converted to 2K resolution.

*Id.* at p. 59.

### 3.4   HDCP Cipher

The HDCP cipher consists of a 128-bit AES module that is operated in a Counter (CTR) mode as illustrated in Figure 3.2.



**Figure 3.2.  HDCP Cipher Structure**

$k_z$ is the 128-bit Session Key which is XORed with $lc_{128}$. Elementary streams within a given program or across multiple programs may use the same $k_z$ and $r_{iv}$.

High-bandwidth Digital Content Protection System:   Interface Independent Adaptation at (available      at      p.      53      (available      at      https://www.digital-

cp.com/sites/default/files/specifications/HDCP%20Interface%20Independent%20Adaptation%2

0Specification%20Rev2_2_FINAL.pdf).



Advanced Access Content System (AACS):  Blu-ray Disc Pre-recorded Book at p. 63 (available

at                                              http://aacs.tjn.chef.causewaynow.com/wp-

content/uploads/2019/02/AACS_Spec_BD_Prerecorded_Final_0_953.pdf).

40.     Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff

as a result of Defendants' infringement of the '782 patent in an amount subject to proof at trial,

which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed

by this Court under 35 U.S.C. § 284.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants as follows:

A.     An adjudication that Defendants have infringed the '782 patent;

B.     An award of damages to be paid by Defendants adequate to compensate Plaintiff for Defendants' past infringement of the '782 patent and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.     A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiff's reasonable attorneys' fees; and

D.     An award to Plaintiff of such further relief at law or in equity as the Court deems just and proper.


Dated:  October 29, 2019          STAMOULIS & WEINBLATT LLC

                                  */s/ Richard C. Weinblatt*
                                  Stamatios Stamoulis (#4606)
                                  Richard C. Weinblatt (#5080)
                                  800 N. West Street, Third Street
                                  Wilmington, DE 19801
                                  Telephone:  (302) 999-1540
                                  Facsimile:  (302) 762-1688
                                  stamoulis@swdelaw.com
                                  weinblatt@swdelaw.com

                                  *Attorneys for Plaintiff*
                                  *Piracy Protection LLC*